IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| GINA MCCORMICK, | Case No. 4:24-cv-457-SDJ-KPJ |
| Plaintiff, | Judge Sean D. Jordan |
| v. | |
| ETHOS TECHNOLOGY INC. D/B/A/ ETHOS LIFE INSURANCE SERVICES, | |
| Defendant, | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
RULE 11 MOTION FOR SANCTIONS**

COMES NOW Plaintiff Gina McCormick ("Mrs. McCormick"), by and through counsel Amy L. B. Ginsburg of Ginsburg Law Group, P.C., and files her response in opposition to the Rule 11 Motion for Sanctions filed by Defendant, Ethos Life Insurance Services ("Ethos"):

## I. INTRODUCTION

Defendant's Rule 11 Motion for Sanctions should be denied because Plaintiff's complaint under the Telephone Consumer Protection Act (TCPA) is well-grounded in fact and law, and there is no evidence of bad faith or improper purpose in filing the complaint. Defendant's Motion relies on one single point – that Plaintiff consented to the communications – and for this reason the Complaint is frivolous, counsel knew this and should be sanctioned. However, this fact is in dispute. Mrs. McCormick does not agree that she consented to the communications. The lead generation industry is one fraught with fraud, as will be explained more fully below. That Defendant has a lead with her information does not mean it had her consent. Mrs. McCormick disputes that she visited the website in Defendant's motion, that she ever sought information on life insurance, and most importantly, that she ever consented to communications. The complaint

1

in this matter was not frivolous nor was it brought for an improper purpose, and Plaintiff's claims have evidentiary support. For this reason, Defendant's Motion should be dismissed.

## II. STATEMENT OF RELEVANT FACTS

Plaintiff, Gina McCormick, owned a cell phone, the number for which was (XXX) XXX-4158. Doc. No. 1., ¶ 9. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on or around March 13, 2021. *Id.,* ¶ 10. Mrs. McCormick registered that cell phone number on the Do Not Call list in order to avoid receiving unwanted calls. *Id.,* ¶ 11.

Defendant's representative Katy Carter, first contacted Mrs. McCormick via text message on her cellular number ending in 4158 soliciting the sale of Ethos life insurance. *Id.,* ¶ 14. Mrs. McCormick knew the text was from Ethos because Ms. Carter provided the following link in her text message to Plaintiff: https://agents.ethoslife.com/invite/56092.. *Id.,* ¶ 1 On this same date, Ms. Carter also placed two calls to Mrs. McCormick further soliciting the sale of life insurance through Ethos. *Id.* ¶ 18.5. Ms. McCormick has never had any established business relationship with Ethos. *Id.* ¶ 22. She also never sought or solicited information from Ethos prior to receiving the calls and the text at issue in this matter and was not interested in purchasing life insurance. *Id.* ¶ 20. Further, Mrs. McCormick never consented to the calls and text she received. *Id.,* ¶ 21.

Plaintiff alleges in her Complaint that Defendant violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by placing these calls and the text to the cellular telephone number belonging to Plaintiff despite registration on the National Do Not Call Registry and without having signed, written prior express invitation or permission. *Id.* ¶ 25. Plaintiff seeks $500 - $1,500 per communication, with damages in this matter ranging from a total of $1,500 - $4,500.

According to the Motion, it appears Ethos obtained Mrs. McCormick's information from a third-party lead generator website: https://webgenins.com. Doc. No. 12. Although they provide

2

no Declaration of any representative from this website, or any screenshots of this website[1], Defendant asserts that Mrs. McCormick went to this site and clicked a box, thereby consenting to communications from Defendant and other entities. *Id.* However, prior to filing the lawsuit Mrs. McCormick had never visited this website. *See* Dec. of Gina McCormick. She also had life insurance at the time through Farmers Insurance, was not looking for life insurance, and had a major medical issue, which likely would have limited, if not precluded her from obtaining life insurance at the time. *Id*. The lead information also had inaccurate information related to the IP address, specifically the IP address was for a location in Austin, Texas, somewhere Mrs. McCormick had not lived or worked, nor visited at that time in 2021. *Id*.

## III. PROCEDURAL HISTORY

Prior to bringing the present suit against Ethos, Mrs. McCormick did attempt to resolve this matter on her own with Defendant. The undersigned Plaintiff's counsel also discussed and attempted to resolve the issues raised in this matter with Defendant prior to bringing the present suit. *See* Dec. of Amy L. B. Ginsburg. Defendant's counsel, Tiana Demas, and the undersigned counsel communicated over the course of several months regarding this matter reviewing the facts prior to the matter being filed. *Id.*

In addition to the Federal Rules, and local rules of this Court, the undersigned counsel always endeavors to adhere to The Texas Lawyer's Creed (the "Creed"). *Id.* Clients are always made aware of this Creed, and know that counsel's firm adheres to its mandates, and that includes not pursuing a course of action that lacks merit. *Id.* All disputes of fact that were raised between the parties during preliminary discussions with Ms. Demas were thoroughly reviewed with Mrs. McCormick prior to filing to ensure that any factual allegations were supported by evidence –

---

[1] At the time of submitting this response, the link in the footnote was also not working.

including testimony of Mrs. McCormick, or in a document or recording.  *Id.*

On May 17, 2024, Mrs. McCormick filed her Complaint against Ethos.  Plaintiff's counsel agreed to three extensions to respond to the Complaint on July 11, 2024, July 30, 2024, and August 21, 2024.  Doc. Nos. 6, 8, and 10. Defendant's current counsel and Plaintiff's counsel also exchanged numerous emails once they were retained to schedule a time to confer regarding the pending motion.  *Id.*   Counsel once again conferred with Mrs. McCormick upon receipt of the present Motion from counsel to again review the factual allegations.  *Id.*

Although the Creed discourages attorneys from seeking sanctions against fellow attorneys, and it is not the undersigned's practice to file such motions, Defendant filed the present Motion for Sanctions on September 13, 2024. Doc. No. 12.  On this same date, Defendant filed a Motion to Dismiss.  Doc. No. 11.  Plaintiff sought extensions for both motions, which were granted by this Court.  Doc. Nos. 13-15.  Plaintiff has amended her Complaint to include additional facts, addressing points raised in the Motion to Dismiss.  Doc. No. 16.  Plaintiff is now responding to the Motion for Sanctions, which should be denied.

## IV.   RULE 11 STANDARD

The standard for complying with Rule 11 is stated explicitly in the text of that rule. "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; Fed. R. Civ. P. 11(b).

The purpose of Rule 11 is to determine whether the judicial process has been abused, not render *"a judgment on the merits of an action." Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396 (1990); *see also* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.")

Sanctions under Rule 11 are not to be applied where the position asserted is reasonable and plausible at the time it was asserted. *See Snow Ingredients, Inc. v. SnoWizard, Inc.,* 833 F.3d 512, 528 (5th Cir. 2016). Courts have broad discretion when determining whether the alleged conduct is sanctionable, as noted by this Court. *Spindle v. CKJ Trucking, LP*, 2020 U.S. Dist. LEXIS 46497, *16 (Eastern Dist. Tex. March 18, 2020)(J. Jordan), citing *Downstream Envtl., L.L.C. v. Gulf Coast Waste Disposal Auth.*, No. 4:05-CV-1865, 2006 U.S. Dist. LEXIS 81362, 2006 WL 3246348, at *1 (S.D. Tex. Nov. 7, 2006) (citing *Cooter*, 496 U.S. at 393, 110 S.Ct. 2447); *see also Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (recognizing that the "abuse of discretion standard [applied to Rule 11 sanctions] is necessarily very deferential"). This Court has noted that such violations are reserved for "the rare and exceptional case where the action is *clearly* frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Spindle* 2020 U.S. Dist. LEXIS 46497, at *17, citing *Laughlin v. Perot*, No. 3:95-CV-2577, 1997 U.S. Dist. LEXIS 4987, 1997 WL 135676, at *8 (N.D. Tex. Mar. 12, 1997 (quoting *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) (emphasis added)); *see also Erwin v. Russ*, 481 F. App'x 128, 132 (5th Cir. 2012) (per curiam) (unpublished) ("Rule 11 permits sanctions when attorneys unreasonably pursue frivolous

or groundless suits.").

The standard to be used in the Fifth Circuit is an objective one. *See Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 803 (5th Cir. 2003) (en banc); *Raylon LLC v. Complus Data Innovations, Co.*, 700 F.3d 1361, 1367-1368 (Fed. Cir. 2012) (applying 5th Circuit law, reversed sanctions because objective standard not followed). Moreover, a Rule 11 motion should not be used to test the merits of a party's claims. *See Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2019 U.S. Dist. LEXIS 169673, *19 (E.D. Tex. Mar. 28, 2019); *see also* Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments) ("Rule 11 motions . . . should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.").

A violation of Rule 11 is a serious matter, as is the assertion that a violation has occurred. *See Intellectual Ventures II LLC*, 2019 U.S. Dist. LEXIS 169673 at *19; *see also Manson v. Careington Int'l Corp.*, 2021 U.S. Dist. LEXIS 165603, *16 (E.D. Tex. Aug. 8, 2021). An improper threat of a Rule 11 motion has consequences that harm the judicial process. *Motiva Patents, LLC v. Sony Corp*, 408 F.Supp.3d 819, 839 (2019) ("Unsupported threats to pursue Rule 11 sanctions obstruct the truth-seeking process, build acrimony between the parties, and frequently waste judicial resources."). Courts in this District have recognized the potential to misuse Rule 11, citing the Advisory Committee notes:

> Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine.

*Roor Int'l BV v. Stinky's Smoke Shop, LLC*, 2021 U.S Dist. LEXIS 226332, *7 (E.D. Tex. Nov. 24, 2021) (citing Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment). "The Advisory Committee stresses that 'the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.'" *Id*. (same).

## V. LEGAL ARGUMENT

Defendant's Motion for Rule 11 Sanctions should be denied. Defendant's argument in support of sanctions relies on one point – that it has irrefutable evidence that it had consent to call Mrs. McCormick – and it has provided evidence of this to counsel. The problem is this evidence is not irrefutable. It is disputed.

Mrs. McCormick disputes ever visiting the website that Defendant alleges it obtained consent from - https://webgenins.com. *See* Dec. of Gina McCormick. She further disputes ever providing consent to Defendant. Her position on this has not changed since the first discussion with Defendant's counsel two years ago. This is supported by Mrs. McCormick's statements that she did not visit the website, that she was not looking for life insurance at any time in 2021, already had a life insurance policy that was purchased near the time she was married with Farmers Insurance, that she was looking for ways to stop robocalls (including adding her number to the Do Not Call Registry in 2021), and was battling cancer in 2021 would not even have thought to look for life insurance even if considering it since she likely would not have been approved. *Id.*

The information that Defendant received from the website was also all information that was publicly available. *Id.* Further, any practitioner of the TCPA knows the song-and-dance that takes place between counsel for the telemarketer and counsel for the consumer at the outset of litigation or discovery. Namely, counsel for the telemarketer will tell the plaintiff lawyer that his/her client has "solid consent" of the consumer and proceed to send over a strip of data

7

containing a consumer name, phone number and sometimes an IP address or some other information it believes identifies the consumer. However, this is nothing more than a showing that the telemarketer acquired consumer data. That is, for all intents and purposes, a prerequisite for any targeted marketing call to anyone. In the telemarketing industry, it is unfortunately commonplace for data-brokers and "lead-generators" to sell consumer names and phone numbers to telemarketers with the false pretense that the consumers had consented or opted in to receive those calls. *See infra.* The Federal Trade Commission has brought numerous actions and levied substantial penalties against lead generators and telemarketers engaged in the selling and buying of fabricated or deceptive leads, masquerading as consumer "consent." Several of the countless examples of this follow:

In 2016, the Federal Trade Commission filed suit against a conglomerate of data-brokers and lead generators that operated landing pages which purported to offer goods and services such as solar panels and walk-in bathtubs, and then sold the names and phone numbers of those consumers to telemarketers, who were often selling goods and services totally distinct from those that the consumers had previously expressed an interest. *See U.S. v. Consumer Education.Info, Inc.*, Case 1:16-cv-02692 (Dist. Colo. 2016).

Just two months after the *Consumer Education.Info* suit was filed, the FTC approved a settlement including a penalty against those lead generators and data brokers for $2,339,687.00, which was reduced to $100,000 subject to compliance with the terms of the settlement and timely payment by the defendant companies. *See* Federal Trade Commission: Sales Lead Generators Fined and Barred from Violating FTC's Telemarketing Sales Rule (Nov. 1, 2016), available at: https://www.ftc.gov/news-events/news/press-releases/2016/11/sales-lead-generators-fined-barred-violating-ftcs-telemarketing-sales-rule.

Just days before the filing of this opposition brief, in *FTC v. Day Pacer LLC*, No. 19 CV 1984, 2023 WL 5671618 2023 U.S. Dist. LEXIS 155174 (N.D. Ill. Sep. 1, 2023), the Northern District of Illinois entered partial summary judgment for the FTC against various telemarketers and lead generators on the basis of a systemic operation to telemarket "educational opportunities" to persons whose data was transmitted through websites unrelated to the subject matter of the calls and often lacking evidence of actual submission by the consumers:

> Defendants' primary evidence of "consent" is their call records, which purport to identify the URLs, or website locations, where the consumers entered their phone numbers. However, Defendants have not demonstrated that the URLs lead to pages collecting valid written consents.
>
> ********
>
> records identified by the FTC support its position that the LLC Defendants did not have valid consent. Consumers entered their contact information on websites primarily focused on job opportunities, not education. …Similarly, Lon Kennard, who was vice president of operations for EduTrek, wrote in a November 2014 email to employees that "[m]any of our leads come from job boards (or similar sites)" and that "these people may not have read/understood the statement asking if they would like a phone call from us regarding their education.

*FTC v. Day Pacer LLC*, 2023 U.S. Dist. LEXIS 155174, at *54-56.

This small sample of FTC actions highlight the inherent problem with the premise that a telemarketer acquiring a "lead" with consumer data means that the consumer actually provided his/her "consent." The fact that Ethos acquired Mrs. McCormick's personal data does not necessarily mean it had her consent.

In this case, Mrs. McCormick states her number was on the Do Not Call Registry, and that she did not consent to the Defendant's calls and text. This is sufficient to state a claim under the TCPA. The Plaintiff's assertion that she did not provide consent is a factual dispute that should be resolved through the discovery process, not through a Rule 11 motion.

This matter was not brought for any improper purpose, to harass anyone, or to increase the

9

cost of litigation. The matter has factual and legal support and was only brought because factual issues could not be resolved between the parties' prelitigation. Arguably the only actions increasing the costs in this matter are the present motions, as this matter has a value somewhere between $1,500 and $4,500[2] plus costs, and yet the parties are engaging in the present motion practice. The claims in this matter are also supported by current law. The facts alleged in the Complaint include that Plaintiff's number was on the Do Not Call Registry and despite that registration, she received two calls and one text message from Defendant. This gives rise to a claim under 47 U.S.C. § 227(c). Although Defendant alleges consent, this is disputed by Plaintiff. The claims also have evidentiary support, which was reviewed by me at the outset when accepting the case, after my initial discussions with Defendant's counsel, prior to filing the Complaint, and more recently after discussions regarding the planned filing of this Motion. For all the foregoing reasons, the Motion should be denied.

## VI. CONCLUSION

In conclusion, the Plaintiff's complaint under the TCPA is well-grounded in fact and law, and there is no evidence of bad faith or improper purpose in filing the complaint. Therefore, the defendant's Rule 11 Motion for Sanctions should be denied.

                                        **RESPECTFULLY,**

By:    *s/ Amy L. B. Ginsburg*
         Amy L. B. Ginsburg (24107506)
         GINSBURG LAW GROUP, P.C.
         653 W. Skippack Pike Suite 300-71
         Blue Bell, PA 19422
         T: (855) 978-6564
         F: (855) 777-0043
         www.ginsburglawgroup.com

Date: October 11, 2024

---

[2] $1,500 per communication

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of October 2024 a copy of the foregoing was furnished via Electronic Filing Service to counsel for the Defendant.

By: *s/ Amy L. B. Ginsburg*

Amy L. B. Ginsburg
GINSBURG LAW GROUP, P.C.
653 W. Skippack Pike Suite 300-71
Blue Bell, PA 19422
T: (855) 978-6564
F: (855) 777-0043
www.ginsburglawgroup.com