IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **GINA MCCORMICK** § | |
| § | |
| v. § | NO. 4:24-CV-00457-SDJ-BD |
| § | |
| **ETHOS TECHNOLOGIES, INC.,** *et al.* § | |

## MEMORANDUM OPINION AND ORDER

Defendant Ethos Technologies, Inc., moved for sanctions under Federal Rule of Civil Procedure 11. Dkt. 12; *see* Dkt. 18 (response). The motion will be denied.

## BACKGROUND

According to McCormick's original complaint, Dkt. 1, her personal cell phone number is registered on the National Do Not Call Registry. She alleges that she received two calls and one text message from Katy Carter, a representative of Ethos, even though she never solicited information from Ethos or consented to be contacted by it. McCormick sued Ethos for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and later amended her complaint to add Carter as a defendant. Dkt. 16.

Ethos contacted McCormick's counsel, asserting its position that McCormick consented to the calls and text message and providing as evidence a recording of a phone call and a record of an online consent form. Ethos argued that McCormick's statements in her complaint that she did not consent to be contacted by Ethos violated Rule 11. After the parties unsuccessfully tried to resolve the issue, Ethos served McCormick's counsel with its proposed motion for sanctions via email. Dkt. 12-2 at 2. Twenty-one days later, Ethos filed the motion for sanctions. Dkt. 12.

## RULE 11 STANDARD

Rule 11 provides that any attorney or unrepresented party, by signing, filing, submitting, or advocating a pleading, written motion, or other paper, certifies to the court

> that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The court may impose sanctions for violating Rule 11 sua sponte or on a party's motion. *Id.* R. 11(c)(1)–(3). The Rule includes a safe-harbor provision—any motion for Rule 11 sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* R. 11(c)(2).

The central purpose of Rule 11 is "to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). It "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Id.* (quotation marks omitted).

## DISCUSSION

### I. The motion for Rule 11 sanctions is premature.

Ethos moved for sanctions against McCormick and her counsel based on the factual allegations in McCormick's original complaint. Dkt. 12. Ethos filed its motion for sanctions the same day it filed its first motion to dismiss, Dkt. 11, and before the court entered any orders governing discovery.

Imposition of Rule 11 sanctions is an extraordinary remedy "normally reserved for [the] rare and exceptional case where the action is clearly frivolous, legally unreasonable, or without legal foundation or brought for an improper purpose." *Butowsky v. Folkenflik*, No. 4:18-CV-00442, 2020

2

WL 9936143, at *19 (E.D. Tex. Sept. 1, 2020) (quotation marks omitted), *report and recommendation adopted*, No. 4:18-CV-00442, 2020 WL 9936140 (E.D. Tex. Sept. 21, 2020). "Rule 11 should not be used to test the legal or factual sufficiency of a party's claims." *Id.* at *22. And where a Rule 11 motion targets the pleadings, it "normally will be determined at the end of the litigation." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56 n.19 (1991) (quoting Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment). A pre-discovery Rule 11 motion is not the proper method to resolve factual disputes raised in the complaint. *See Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778, at *5 (W.D. Tex. July 15, 2024) (noting, in a TCPA case in which the defendants argued that the plaintiff lied about consent, that "[i]f either party has knowingly misrepresented material facts to the Court under penalty of perjury, they may face severe sanctions" but adding that, "because such issues are intertwined with the ultimate merits of [the plaintiff's] claims, the Court defers the question of sanctions until the completion of litigation").

Under those authorities, Ethos's motion is premature. That is reason enough to deny it. But as explained next, there is a second reason.

## II. Unresolved disputes preclude Rule 11 sanctions.

Ethos points to one assertion in the complaint that, it argues, is untrue: McCormick claims she did not consent to being contacted by Ethos about insurance. Ethos argues that McCormick consented to being contacted by filling out an online form, that her lack of memory of completing that form does not mean she did not do so, and that she consented again during the first phone call when she told the caller that she would be available for another call "anytime." Dkt. 12 at 3. To support its motion, Ethos attached a copy of what it identifies as the response collected from McCormick through the online form, Dkt. 12-1, and a recording of the first call to McCormick, Dkt. 12-3.

McCormick argues that everything in her complaint is accurate. She insists that she did not fill out the online consent form—not that she does not remember doing so. She argues that the IP

3

address collected by the online form is linked to a location in Austin, far from her home in Prosper. She also argues that her statement during the first call that she was available for a call back any time did not establish a business relationship. And McCormick argues that the allegations in the complaint that Ethos says are sanctionable misrepresentations are, instead, the disputed facts that must be resolved through litigation.

There are at least two issues that prevent the court from imposing sanctions. First, the parties dispute whether McCormick filled out the online form. Second, they dispute whether McCormick created "an established business relationship," 47 C.F.R. § 64.1200(f)(15) (2021), during the first call.

### A. The online form

First, the parties dispute whether McCormick filled out the online consent form. Ethos's sanctions motion attaches a copy of what it says is the data gathered from a form previously found at https://webgenins.com and preserved at https://web.archive.org/web/20210228073744/https://webgenins.com. Dkt. 12-1. That attachment shows McCormick's first and last name, home address, gender, phone number, a timestamp, a "LeadID," the IP address 69.167.45.134, and three redacted fields. *Id.* at 4. The text associated with the form includes the statement "I agree to receive telemarketing calls and pre-recorded messages via an auto dialed phone system, even if my telephone number is a mobile number that is currently listed on any state, federal or corporate Do Not Call list." *Id.* at 2.

McCormick maintains that she did not fill out the consent form. She argues that the IP address listed on the response to the consent form is associated with a location at which she had not lived, had not worked, and had not visited at or around the time indicated by the timestamp. Dkt. 18 at 3. Ethos dismisses that assertion and suggests without evidence that the IP address could belong to McCormick's husband. Dkt. 19 at 4 n.6. But neither party presents evidence explaining how IP addresses are geolocated or connecting McCormick to an Austin IP address. The court cannot

4

decide the factual issue of whether the IP address was connected to McCormick in the absence of any evidence.

Although Ethos argues that it "strained credulity" to suggest that someone other than McCormick provided her information, Dkt. 12 at 3, strained credulity is not the test for Rule 11 sanctions; it is objective reasonableness under the circumstances. *Jennings v. Joshua ISD*, 948 F.2d 194, 197 (5th Cir. 1991). And the court cannot conclude that it was objectively unreasonable for McCormick's counsel to sign the complaint based on McCormick's statements that she did not consent to being contacted by Ethos. *See* Dkt. 18-2 (McCormick's declaration).

### B. An "established business relationship"

Ethos also argues that McCormick created an established business relationship during the first phone call. If that is correct, it would insulate Ethos from liability for the subsequent call and text message. McCormick does not deny having the conversation in that recorded phone call, but she denies that it created an established business relationship.

As they do today, the regulations implementing the TCPA provided at the relevant time that "[n]o person or entity shall initiate any telephone solicitation to" a residential telephone subscriber whose number is registered on the national do-not-call list. 47 C.F.R.§ 64.1200(c) (2021). But there are and were exceptions, including for calls or messages "[t]o any person with whom the caller has an established business relationship." *Id.* § 64.1200(f)(15) (2021). "[E]stablished business relationship" means

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber . . . on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5) (2021). The relationship is also limited to that particular business entity and certain affiliates: "The subscriber's established business relationship with a particular business entity does not extend to affiliated entities unless the subscriber would reasonably expect them to

5

be included given the nature and type of goods or services offered by the affiliate and the identity of the affiliate." *Id.* at § 64.1200(f)(5)(ii) (2021).

The first call to McCormick was made by a male caller who said he was calling from "Senior Benefit." Dkt. 12-3. He told McCormick about a program "specially designed for those who are above the age of fifty." He told her that a licensed agent would call her in the next couple of days and asked her when she would feel comfortable receiving that call. In response, McCormick said: "I'm available at any time." The caller then asked McCormick her favorite color ("blue") and preferred beneficiary ("my spouse"). When he asked McCormick "which program you would like to listen, ma'am, the middle one, the lowest one, or the highest one?" she replied "the highest one." The caller then confirmed McCormick's address and told her that "Katy" would call her back in 24 to 48 hours. The caller did not identify the business as Ethos Technologies or Ethos Life Insurance Services.

Ethos does not explain how that call meets the regulatory definition of an established business relationship, which is one formed by a "voluntary two-way communication . . . on the basis of the subscriber's inquiry or application regarding products or services." 47 C.F.R. § 64.1200(f)(5) (2021). McCormick did not ask any questions of the caller other than asking him to confirm his name. It is unclear how McCormick's responses to the caller's questions could be construed as an "inquiry or application." *See Inquiry, Black's Law Dictionary* (11th ed. 2019) ("A question someone asks to elicit information."). Ethos also does not argue that any business relationship McCormick formed with a caller from Senior Benefit would lead her to "reasonably expect" Ethos "to be included [as an affiliate] given the nature and type of goods or services offered by the affiliate and the identity of the affiliate." *Id.* at § 64.1200(f)(5)(ii) (2021). The court cannot conclude, based on that recording and the argument in Ethos's motion for sanctions, that McCormick established a business relationship with Ethos during that call.

## CONCLUSION

It is **ORDERED** that the motion for sanctions, Dkt. 12, is **DENIED**.

So **ORDERED** and **SIGNED** this 27th day of March, 2025.

_____
Bill Davis
United States Magistrate Judge